IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

UNITED STATES OF AMERICA

v.  Criminal No. 4:06CR143

WILLIAM WORSHAM,

MEMORANDUM OPINION & ORDER

Presently before the Court is Defendant William Worsham's Motion to Suppress Evidence, filed pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure, wherein the Defendant moves the Court to suppress "any and all evidence seized in connection with the arrest and the search of his person on September 6, 2006." Def.'s Mot. Supp. 1. A hearing on this matter was conducted on Wednesday, February 14, 2007. For the reasons that follow, the Court **DENIES** the Defendant's Motion to Suppress.

I.   FACTUAL & PROCEDURAL BACKGROUND

   A.   Facts

On September 6, 2006,[1] at 8:26 p.m., Sergeant Barefoot and K-9 Officer Tarter of the Newport News Police Department were on patrol in the Dickerson Courts Apartment Complex, a "Weed and Seed" public housing complex in Newport News posted with "no trespassing signs." This is a high-crime area for which a Federal grant has been given for rejuvenation. The officers

---

[1] The Defendant's memorandum equivocates on this date. He first states that the allegedly unlawful seizure occurred on September 6, 2006, but later states that it occurred on November 6, 2006. The Government's response specifies a date of September 6, 2006, Gov.'t Resp. Def.'s Mot. Supp. 1, and the parties agreed at a hearing before the Court that September 6, 2006, is the accurate date.

were patrolling the area because of this grant. Officer Tarter was accompanied by a police dog. Upon seeing the Defendant emerging from a grassy area between two buildings in the apartment complex, the officers approached and asked him if he lived in the apartment complex, and if he had identification. The Defendant responded by stating that he had no identification with him, but that he was visiting an individual named "Kiki." At that time, the officers requested that the Defendant take them to the apartment where he had been visiting, to which the Defendant voluntarily agreed.

The officers followed the Defendant until they arrived at an apartment where a woman was present on the stoop. When asked by the Defendant if he had been visiting her earlier, the woman, who confirmed that her nickname was "Kiki," denied that the Defendant had been visiting with her, and advised the officers the he had only walked past the apartment earlier and said "hi." Sergeant Barefoot then briefly spoke with the woman in private while Officer Tarter (and his K-9) accompanied the Defendant.

After his short conversation with "Kiki," Sergeant Barefoot informed the Defendant that he was under arrest for trespassing. Although the Defendant put up a minor struggle, complied with the officers once Sergeant Barefoot told Officer Tarter to release the dog if the Defendant escaped. After placing the Defendant under arrest, the officers conducted a search incident to the arrest, which yielded a 9 mm pistol from the Defendant's waistband.

    **B.**    **Procedural Posture**

The Government filed an Indictment against the Defendant on November 14, 2006. The Defendant filed this motion on February 2, 2007, and the Government responded on February 5, 2007.

**II.**    **LEGAL BACKGROUND**

### A. Defendant's Argument

Defendant asserts that the officers violated his Fourth Amendment right to be free from unreasonable search and seizures when they initially stopped and questioned him without reasonable suspicion. According to the Defendant's factual account, nothing "[gave] rise to the conclusion that Worsham was engaged in serious criminal activity that would warrant detention." Def.'s Mot. Supp. 3. As such, the Defendant maintains that "any evidence that resulted from the Government's 'exploitation of that illegality' should be suppressed." Id. (citing Wong-Sun v. United States, 371 U.S. 471, 488 (1963)).

### B. Government's Argument

The Government contends that the Defendant was not seized when the officers initiated a consensual "police-citizen encounter" in which "a reasonable person would feel free to leave." Gov.'t Resp. Mot. Supp. 2. Under these circumstances, the officers' initial contact with the Defendant would not have implicated the Fourth Amendment. Additionally, the Government maintains that the firearm was recovered during a search incident to a lawful arrest following the officers' probable cause to detain the Defendant for trespassing.

### C. Applicable Law

#### 1. Police-Citizen Encounter

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. However, the Fourth Amendment is not implicated in a "police-citizen encounter," in which law enforcement officers approach an individual in a public place and speak with or question that person with the intent to obtain information. Florida v. Bostick, 501 U.S. 429, 434 (1991). In Bostick, the Supreme Court of the United States held that:

> a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free "to disregard the police and go about his business," the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature.

Id. (quoting California v. Hodari D., 499 U.S. 621, 628 (1991)). Even if officers have no basis for suspecting a particular individual, "they may generally ask questions of that individual, ask to examine the individual's identification, and request consent to search his or her luggage—as long as the police do not convey a message that compliance with their request is required." Id. at 434–35 (citations omitted). Thus, an individual's Fourth Amendment right is implicated when he or she is no longer "free to leave." Michigan v. Chesternut, 486 U.S. 567, 573 (1988).

"[T]o determine whether a particular encounter constitutes a seizure, a court must consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Bostick, 501 U.S. at 439; see also United States v. Sullivan, 138 F.3d 126, 131–33 (4th Cir. 1998); United States v. Lattimore, 87 F.3d 647, 650–53 (4th Cir. 1996); United States v. Wilson, 953 F.2d 116, 121–22 (4th Cir. 1991). In viewing the totality of the circumstances, a court may consider "the characteristics of the accused (such as age, maturity, education, intelligence, and experience) as well as the conditions under which the consent . . . was given (such as the officer's conduct, the number of officers present; and the duration, location, and time of the encounter)." Lattimore, 87 F.3d at 650 (citations omitted). The individual's knowledge that he possessed the right to terminate the encounter is relevant in determining the voluntariness of his or her consent, but the Government need not demonstrate that the individual knew of this right. Id.

  **2.**  **Investigative Stop (Reasonable Supsicion)**

As opposed to a police-citizen encounter of mutual consent, an investigative stop of an individual by law enforcement triggers Fourth Amendment scrutiny. An officer may stop and briefly detain a person for an investigative Terry stop only when there exists "reasonable suspicion," based on articulable facts, that criminal activity is afoot. United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 30 (1968). Officers need not have probable cause. Sokolow, 490 U.S. at 7 ("[T]he level of suspicion required for a Terry stop is obviously less demanding than that for probable cause.")

As with police-citizen encounters, a court must determine whether reasonable suspicion exists in view of the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273–74 (2002). Although "the concept of reasonable suspicion is somewhat abstract," courts "have deliberately avoided reducing it to 'a neat set of legal rules.'" Id. at 274 (quoting Ornelas v. United States, 517 U.S. 690, 695–96 (1996)). Thus, the legality of an investigative stop turns on what an officer deems "reasonable suspicion," which the Fourth Circuit has called "a common-sensical proposition . . . crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993); see also Arvizu, 544 U.S. at 273 (allowing "officers to draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal quotations omitted).

While the reasonable suspicion standard is not onerous, neither an officer's reliance on a "mere hunch," Arvizu, 544 U.S. at 274, nor an uncorroborated anonymous tip is sufficient to establish reasonable suspicion. See, e.g., Florida v. J. L., 529 U.S. 266, 270–74 (2000). A number of factors have been approved as properly creating reasonable suspicion: (1) presence in a high crime area, United States v. Perkins, 363 F.3d 317, 320–21 (4th Cir. 2004); (2) informant

5

tips and information, including independently-corroborated anonymous tips, Alabama v. White, 496 U.S. 325, 329–30 (1990); (3) lateness of the hour, Lender, 985 F.2d at 154; (4) observation by law enforcement of what appears to be criminal conduct based on their experience, Terry, 392 U.S. at 22–23; (5) evasive conduct, United States v. Smith, 39 F.3d 579, 585–87; and (6) "furtive behavior," United States v. Sims, 296 F.3d 284, 285–87 (4th Cir. 2002). An individual's presence in a "high crime area," standing alone, is insufficient to constitute "reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

### 3. Evidence Seized Incident to a Lawful Arrest

Searches incident to a lawful arrest are a well-established exception to the warrant requirement of the Fourth Amendment. See, e.g., Michigan v. DeFillippo, 443 U.S. 31, 35 (1979); United States v. Sheetz, 293 F.3d 175, 184 (4th Cir.), cert. denied, 537 U.S. 963 (2002). Warrantless arrests, and searches incident thereto, are permitted where there is probable cause to believe a felony has been committed by the arrested individual, based on the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 230–31 (1983). Likewise, a warrantless arrest of an individual who committed a misdemeanor in the presence of an arresting officer is also permitted. Maryland v. Pringle, 540 U.S. 366, 370 (2003) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)).

### III. ANALYSIS

In consideration of the totality of the circumstances, the Court finds that the officers had reasonable suspicion to approach the Defendant when they observed him walking in a grassy area between two buildings of the apartment complex where "No Trespassing" signs had been visibly posted. Moreover, the Court finds that the officers' initial contact with the Defendant constituted a police-citizen encounter for which the Fourth Amendment is not implicated.

### A. Investigative Stop (Reasonable Suspicion)

A number of factors support the Court's finding of reasonable suspicion. First, the Defendant was identified in a high-crime neighborhood which had been designated by the United States Department of Justice as a "Weed and Seed" site appropriate for community revitalization. "Weed and Seed is foremost a strategy . . . that aims to prevent, control, and reduce violent crime, drug abuse, and gang activity in designated high-crime neighborhoods across the country." Weed & Seed – Community Capacity Development Office (CCDO), http://www.ojp.usdoj.gov/ccdo/ws/welcome.html (last visited Feb. 14, 2007). Pursuant to this federal program, the officers had a legitimate basis for identifying individuals unlawfully on the premises.

Second, the apartment complex was sufficiently posted with "No Trespassing" signs to place citizens on notice thereof. Under Virginia law, a person may be guilty of criminal trespass if he enters upon the "land, buildings or premises of another . . . after having been forbidden to do so by a sign or signs posted on such lands, buildings, premises or part, portion, or area thereof at a place or places where it or they may reasonably be seen . . . ." Jordan v. Commonwealth, 151 S.E.2d 390, 394 (Va. 1966); see also Va. Code. Ann. § 18.2-119 (2006). Thus, it is no defense that the Defendant may not have seen such postings.

Finally, the general circumstances of the situation support the officers' reasonable suspicion. The Defendant was walking in a grassy area located "in the cut," between two apartment buildings, not intended for foot travel. It was dusk or dark outside. The Defendant lacked identification, and, as noted, the neighborhood was known for its high degree of crime. Considered together, these factors support a finding of reasonable suspicion. Consequently, the Court hereby holds that reasonable suspicion exists when an individual without identification is

found walking after dark in a grassy area, away from the sidewalk, in a high-crime apartment complex posted with "No Trespassing" signs.

### B. Police-Citizen Encounter

Even if the officers did not have reasonable suspicion to stop and temporarily detain the Defendant, however, their initial encounter with him constituted a consensual police-citizen encounter that did not implicate the Fourth Amendment. The officers did nothing to indicate that the Defendant was being seized or detained. When they approached the Defendant, the officers spoke in an ordinary, conversational tone. They did not use their weapons or flashlights in an intimidating or hostile manner, and the K-9 did not act in any way that would inspire fear in the Defendant. Finally, the Defendant willingly engaged in the police-citizen encounter, and agreed to lead the officers to his alleged host residing at the apartment complex. It was the Defendant's own error to misinform the officers. The discovery of such a lie certainly constituted grounds to detain the Defendant.

In light of the foregoing, the Court **DENIES** the Defendant's Motion to Suppress. Accordingly, the handgun recovered by the officers incident to the arrest is lawfully admissible as evidence against the Defendant.

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**

\s\
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

February 15, 2007
Norfolk, Virginia

8